# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TURNER CONSTRUCTION COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INDEPENDENCE EXCAVATING, INC., ) <br> ) <br> Defendant. ) | Civil Action No. 16-337 <br> Judge Nora Barry Fischer |

## MEMORANDUM OPINION

I. BACKGROUND

This multi-million dollar lawsuit involves disputes between a general contractor, Plaintiff Turner Construction Company, ("Turner"), and one of its subcontractors, Defendant Independence Excavating, Inc., ("Independence"), arising from excavation work at the Federal Bureau of Investigation, ("FBI"), Biometric Technology Center New Office Building and Central Utilities Plant in Clarksburg, West Virginia – a building which is situated approximately 8 miles from the Federal Courthouse located in Clarksburg.[1] (Docket Nos. 10, 20). Neither company has its headquarters in Pittsburgh, as Turner is based in New York City and Independence's operations are run from Cleveland, Ohio. (*Id.*). But, both parties maintain offices here. (Docket No. 23). Turner initially filed this case in the U.S. District Court for the District of Columbia but the matter was transferred to this District upon the "consent" of the parties and the entry of an Order by the Court. (Docket Nos. 1, 13). Upon the transfer, this Court directed the parties to show cause why this matter should not be transferred to the U.S.

---

[1] "It is well settled that the Court may take judicial notice of geography and other Courts have used Google Maps to estimate distances between two established locations." *Armstrong Development Properties, Inc. v. Ellison*, 2014 WL 1452322 at *n.3 (W.D. Pa. Apr. 14, 2014).

1

District Court for the Northern District of West Virginia. (Docket No. 17). Upon careful consideration of the parties' Joint Response to Show Cause Order, (Docket No. 23), and after evaluating the relevant private and public factors under *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995), this Court will exercise its broad discretion and transfer this matter to the U.S. District Court for the Northern District of West Virginia pursuant to 28 U.S.C. § 1404(a).

At the outset, the Court notes that it believes that the parties' Joint Response is deficient in several respects. (*See* Docket No. 23). Among them, the parties have: not included any evaluation of the Counterclaims that have now been asserted by Independence; provided only a cursory assertion that the alleged defective performance under the subcontract which necessarily took place at the site in Clarksburg is not relevant to the transfer evaluation, despite the fact that these issues are pled in the Amended Complaint and Counterclaims; and, did not present any evaluation of the potential choice-of-law issues that may or may not be at issue throughout the course of this litigation. (*Id.*).

Most critically, however, is that the parties, through their counsel, failed to disclose to this Court all of the other lawsuits arising out of this particular construction project that they are involved in and are pending in the U.S. District Court for the Northern District of West Virginia.[2] *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, Civ. A. No. 09-290, 2012 WL 5409793, at *2 (W.D. Pa. Nov. 6, 2012) (citing PA. RULES OF PROF'L CONDUCT R. 3.3 (2012)) ("Counsel has a duty of candor to the Court pursuant to Rule 3.3 of the Pennsylvania Rules of Professional Conduct."). To this end, based on a review of the Northern District of West Virginia docket, it appears that both of the instant parties are defendants in a personal injury case

---

[2] The Court takes judicial notice of the docket reports and existence of these pending lawsuits. *See Steadfast Ins. Co. v. Environmental Barrier Co., LLC*, 2016 WL 878122, at *2, n.2 (W.D. Pa. Mar. 8, 2016) (McVerry, J.) (citing FED. R. EVID. 201; *Schuylkill Health Sys. v. Cardinal Health, Inc.*, 2014 WL 3805466, at *1 (E.D. Pa. Mar. 14, 2014)).

that was removed to that Court in September of 2015. *See Newman v. Turner Const. Co. and Independence Excavating*, Civ. A. No. 15-155-IMK (N.D. W.V. removed 9/4/15). Turner is also involved in three separate lawsuits with its subcontractors on the project that are pending in that District. *See e.g.*, *Turner Const. Co. v. American Safety Cas. Ins. Co.*, Civ. A. No. 15-83-FPS (N.D. W.V. filed 5/15/15) (disputes as to millwork subcontract and performance bond); *United States of America, for the use and benefit of Modern Mosaic Ltd., v. Turner Const. Co. et al.*, Civ. A. No. 16-12-FPS (N.D. W.V. filed 1/28/16) (dispute with labor, materials and equipment subcontractor); *Turner Const. Co. v. Wyatt Inc.*, Civ. A. No. 16-58-IMK (N.D. W.V. filed 4/6/16) (dispute with drywall subcontractor). Indeed, Turner initiated the lawsuit against Pittsburgh-based Wyatt, Inc. in the Northern District of West Virginia only a few days ago, i.e., Wednesday, April 6, 2016. So, the question now becomes, why would the litigation over the excavation subcontract and performance thereunder take place in Pittsburgh, Pennsylvania?

II. LEGAL STANDARD

This Court ordered the parties to show cause why the matter should not be transferred under the discretionary transfer statute, 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). It is well established that this Court retains "broad discretion" to transfer venue when justice so requires after weighing the private and public factors set forth in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). *See also Ogundoju v. Attorney General of U.S.*, 390 F. App'x. 134, 137 n.2 (3d Cir. 2010). The relevant private interests include: (1) each party's forum preference; (2) where the claims arose; (3) the convenience of the parties; (4) the convenience of the witnesses; and (5) the location of the books and records. *Jumara*, 55 F.3d at 879. The cited public interests include: (1)

the enforceability of the judgment; (2) practical considerations of expediting trial and reducing costs; (3) administrative difficulties in the two fora due to court congestion; (4) the local interest in deciding local controversies; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law. *Id.*

III. DISCUSSION

Returning to their Joint Response, the Court does not quarrel with the parties' recitation of the applicable legal standards, as they have appropriately set forth the public and private *Jumara* factors, in a manner that is consistent with this Court's many decisions evaluating discretionary transfers of cases under § 1404(a). *See e.g.*, *Northgate Processing, Inc. v. Spirongo Slag McDonald, L.L.C.*, 2015 WL 7308675 (W.D. Pa. Nov. 19, 2015); *Carpenters Combined Funds, Inc. ex rel. Klein v. Kelly Systems, Inc.*, 2015 WL 3457872 (W.D. Pa. May 29, 2015); *Armstrong Development Properties, Inc. v. Ellison*, 2014 WL 1452322 (W.D. Pa. Apr. 14, 2014). Rather, the Court takes issue with the application of those factors to the entirety of the circumstances surrounding this matter, including the facts noted above, and believes that an appropriate weighing of the relevant factors compels that the case be transferred to the Northern District of West Virginia, which is a much more appropriate forum for this case.

With respect to the private *Jumara* factors, the parties suggest that the following considerations support permitting them to litigate in this District: their respective forum preferences, (first and second factors); where the claim arose (third factor); and the convenience of the parties (fourth factor). (Docket No. 23). They contend that the other two factors are neutral because no witnesses will be unavailable if the matter is transferred, (fifth factor) and the books and records can be produced electronically in any other District, (sixth factor). (*Id.*). The Court does not feel the need to further address those matters that they have identified as neutral

in the analysis of the private factors. (*Id.*). However, this Court disagrees that the factors the parties have identified support venue remaining here.

This case was initiated by Turner in the District of Columbia and the forum preferences of the parties must be evaluated in that context. (Docket No. 1). Hence, Turner's choice of forum was simply not the Western District of Pennsylvania, as the parties now suggest. (Docket No. 23). Likewise, Independence moved to have the case transferred to either the Northern District of Virginia or to this Court. (*Id.*). Given their initial positions, the parties' subsequent agreement that they would prefer to litigate here as opposed to the Northern District of West Virginia is entitled to little weight. (Docket No. 13). Their initial venue preferences to litigate in other Districts significantly undermine their present claims that litigating in this particular venue is warranted because it is closer to their respective Pittsburgh offices. Of course, the parties both actively pursued this construction project in Clarksburg and are litigating other cases arising from the project there, further supporting the transfer. *See Northgate*, 2015 WL 7308675, at *3-4 (forum preference is not lightly disturbed when facts showed that the parties actively sought to do business in the transferee forum). The parties have also conducted no evaluation of how litigating this case in Pittsburgh would affect third party witnesses, such as any FBI personnel that may remain at the facility in the Clarksburg area.[3] (*See* Docket No. 23). Hence, the first, second and fourth factors all favor the transfer.

As to the second private factor, where the claim arose, at most, the circumstances result in a finding that this factor is neutral. *See Jumara*, 55 F.3d at 879. Neither party has suggested that the operative agreements contain a forum selection clause indicating that they agreed to litigate here or a choice of law clause demonstrating that Pennsylvania law should apply to their

---

[3] The Court briefly notes that at least one of the third parties mentioned in the parties' pleadings has an office in the Clarksburg area as Thrasher Engineering is based in nearby Bridgeport, W.Va. *See* Trasher Engineering, *available at:* http://thrashereng.com/contact/ (last visited 4/8/16).

breach of contract claims. (Docket No. 23). As both parties have asserted claims that the other breached the subcontract, the Court must weigh the place of contracting, the place of performance and the place of the breach as part of its evaluation. *See Northgate*, 2015 WL 7308675, at *3-4; *see also Air Liquide Indus. U.S. LP v. Butterball, LLC*, Civ. A. No. 12-6390, 2013 WL 3345537, at *5 (E.D. Pa. July 3, 2013) (quoting *CoActiv Capital Partners, Inc. v. Feathers*, No. 08–5506, 2009 WL 1911673, at *5 (E.D. Pa. July 1, 2009)) ("In determining where the claim arose in a breach of contract case, a court looks to 'the place of contract negotiation/execution, performance, or breach.'"). The parties' disputes include whether the correct type of soil was installed prior to the construction of the building and which party was supposed to test the soil before it was installed. (Docket Nos. 10, 20). They likewise contest whether Independence adequately performed under the contract or not. (*Id.*). There is also a claim that Turner failed to pay Independence for remediation work that was completed by Independence "under protest." (Docket No. 20). The facts that some of the negotiations surrounding the parties' contract and certain aspects of the administration of same took place in Pittsburgh are certainly provided some weight. But, the Court cannot conclude that a majority of those facts clearly outweigh the appropriateness of Clarksburg as a venue because it is also the location of both the place of performance and the alleged breach. *See Air Liquide*, 2013 WL 3345527, at *5. Therefore, this third private factor is, at most, neutral.

Overall, the Court holds that the first, second and fourth private *Jumara* factors are supportive of a transfer to the federal court in Clarksburg, while the other factors are neutral, the results of which strongly favor of the transfer. *See Jumara*, 55 F.3d at 879–80. The Court reaches a similar result when it looks to the public *Jumara* factors.

In this Court's opinion, the most relevant public factor is that local courts have inherent interests in presiding over local controversies. *See Armstrong*, 2014 WL 1452322 at *7.

Further, lawsuits relating to the performance of construction projects are localized matters that should be tried within the District where the site is located, as is the case with the four other lawsuits pending in the Northern District of West Virginia arising from this particular project. Other courts have found the location of the construction project to be a significant factor in weighing the public *Jumara* factors. *See e.g., Asphalt Paving Systems, Inc. v. General Combustion Corp.*, 2015 WL 167378, at *8 (D. N.J. Jan. 13, 2015) (construction project was located in Florida, among the factors making transfer to District within Florida appropriate); *Ferratex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 442-43 (D. N.J. Aug. 4, 2015) (construction project in New Jersey did not warrant transfer to Philadelphia); *Al-Ghena Intern. Corp. v. Radwan*, 957 F. Supp. 2d 511, 526-27 (D. N.J. Jul. 16, 2013) (case transferred to Florida district where failed construction project was located); *Wheeling-Pittsburgh Steel Corp. v. U.S. E.P.A.*, 1999 WL 111459 (E.D. Pa. Mar. 3, 1999) (transferring case to Northern District of West Virginia, location of the alleged environmental violations at Plaintiff's site there).

Without citing any supporting authority, the parties surmise that because this case implicates the construction of a federal building on federal land, it somehow undermines a finding that this is a local controversy. (*See* Docket No. 23). This Court disagrees as the federal taxpayers in the Clarksburg area certainly have a right to know how the private contractors and subcontractors that are ultimately compensated (or not) with taxpayer funds performed on the construction project in their District. In contrast, the federal taxpayers here in Pittsburgh would have little, if any, interest in the parties' disputes surrounding this building that is more than 100 miles away in West Virginia. Again, this building is around 8 miles away from the Clarksburg Federal Courthouse. Thus, the parties should have expected that any disputes arising from their participation in the construction project would be litigated and tried there. *See Northgate*, 2015 WL 7308675, at *4.

7

Additionally, the Court recognizes that the interests of judicial economy would be promoted if all of the lawsuits generated by the construction of this building were handled in the same District. *See* 28 U.S.C. § 1404(a); *cf. U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 415 (W.D. Pa. 2006) ("Judicial economy is not a principle that operates exclusively to the courts' advantage. Litigants also benefit when the consolidation of related actions results in the most expedited determination of debts and liabilities."). Construction litigation of this type usually involves complex multi-layered agreements and this appears to be no exception, with a general contract between the United States and Turner and its numerous subcontracts, each of which have their own terms and conditions but also often incorporate certain of the terms and conditions of the general contract. (*See* Docket Nos. 10, 20). In fact, the parties have presented only portions of the subcontract and specifications as attachments to their filings. (Docket No. 20 at ¶¶ 6, 9). As there are undoubtedly common issues pertaining to these agreements, judicial economy is promoted if the same Judge or Judges are able to handle all of these subcontractor cases.[4] *Cf.* FED. R. CIV. P. 42(a) ("If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.").

Further, despite this being a breach of contract action, the parties have made no effort to demonstrate that Pennsylvania law would apply to this case such that this forum appears to have little connection to this dispute. (Docket No. 23). The parties likewise admit that this District is more congested than the Northern District of West Virginia, which is yet another factor favoring transfer. (*Id.* at 8). Indeed, this Court has also been operating with three empty District Judge seats for the past three years while the Northern District of West Virginia has a full complement

---

[4] This Court is well familiar with the quality of the Judges of the Northern District and believes that they are excellent jurists and more than capable of handling this lawsuit.

of Judges.[5] *See Federal Court Management Statistics, June 2015, available at*: http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2015 (last visited 4/11/16). The remaining public factors are neutral and require no further evaluation. However, like the private factors, this Court's weighing of all of the facts and circumstances under the public *Jumara* factors also supports the transfer.

IV.   CONCLUSION

For these reasons, the Court finds that the parties have not met their burden to show cause why this matter should not be transferred to the U.S. District Court for the Northern District of West Virginia pursuant to 28 U.S.C. § 1404(a). An appropriate Order transferring this matter to the Clarksburg Division of that District follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: April 11, 2016

cc/ecf: All counsel of record

      Clerk of Court
      U.S. District Court for the Northern District of West Virginia, Clarksburg Division

---

[5] The Court recognizes that judicial nominations are pending in this District. However, it is simply unknown when and if those will be acted on by the Senate.